UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
KHALID RAHMAN,                    :        16-CV-5318 (LAP)

          Petitioner,             :

                                  :        ORDER ADOPTING REPORT
                                           AND RECOMMENDATION
          v.                      :

                                  :
HAROLD D. GRAHAM,                 :

          Respondent.             :
-------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

     Petitioner KHALID RAHMAN, proceeding pro se, challenges his

conviction pursuant to 28 U.S.C. § 2254 (Petition under 28

U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State

Custody, ("Petition"), dated June 29, 2016 [dkt. no. 1]).

Magistrate Judge Robert Lehrburger submitted a report with the

recommendation that Rahman's petition be denied in full.

(Magistrate Judge Lehrburger's Report and Recommendation

("Report" or "R&R"), dated Sept. 14, 2018 [dkt. no. 22]).

Rahman has filed timely objections to the Report pursuant to 28

U.S.C. § 636(b)(1).  (Petitioner's Objections to Report and

Recommendation ("Obj."), dated Feb. 22, 2019 [dkt. no. 31]).

The Government has not responded to Petitioner's objections.

I.    BACKGROUND

The Court assumes familiarity with the relevant factual background and procedural history as set out in the Report. (R&R at 1-9.)  On July 16, 2012, a grand jury indicted Rahman for murder in the second degree, two counts of criminal possession of a weapon in the second degree, and reckless endangerment in the first degree.  (R&R at 3).  On August 7, 2013, during sentencing, Petitioner's counsel informed the Court that Rahman wished to withdraw his plea.  (Id. at 6.)  Rahman claimed that when he pled guilty, he had been under the influence of PCP, otherwise known as angel dust, which he claimed to have obtained from other inmates.  (Id.)  Rahman told the Court that he "did not understand what was happening at [the plea allocution]" and that he "do[es] not remember what was going on."  (Id.)  He further stated that he did not remember answering any of Judge Merchan's questions during the plea and that he "was very emotional."  (Id.)  Judge Merchan denied Rahman's application to withdraw his plea and sentenced Petitioner according to the terms of the negotiated plea agreement.  (Id. at 7.)

On August 7, 2013, Rahman appealed his judgment of conviction to the Appellate Division.  (Id.)  Represented by new counsel, Molly Ryan, Rahman asserted that (1) he was deprived of conflict-free counsel and there was a total breakdown in

2

communications between him and his trial counsel, Scott; (2) his plea was involuntary and unknowing because he was under the influence of angel dust; and (3) his sentence was overly harsh and should be reduced in the interest of justice; and, (4) he did not voluntarily, knowingly, and intelligently waive his right to appeal his sentence. (Id.) The Appellate Division unanimously affirmed the judgment of conviction. People v. Rahman, 129 A.D.3d 553, 13 N.Y.S.3d 14 (1st Dep't 2015).

On June 19, 2013, Rahman, pro se, applied for leave to appeal to the New York State Court of Appeals. (Id.) The application was denied. People v. Rahman, 26 N.Y. 3d 933, N.Y.S. 3d 96 (2015).

On August 20, 2013, Rahman, pro se, filed motions to vacate the judgment of conviction and withdraw his plea pursuant to C.P.L. §§ 220.60, 440.20. (R&R at 7.) Rahman alleged that (1) his trial counsel, Scott, abandoned him, leaving him "confused and lost" "while [he] maintained [his] innocence and was pointing to the overwhelming evidence which contradicts the ADA's [f]alse witness"; (2) Scott prevented Rahman from presenting an alibi defense to the grand jury; and (3) Scott misinformed him that the prosecution's evidence "would be sufficient and credible enough to convict him of all charges," even though there was allegedly evidence that Rahman could not

have been the shooter from his position. (Id. at 7-8.) Judge
Merchan denied the motion on January 7, 2014. (Id. at 8).

Rahman, pro se, filed a motion for a writ of coram nobis to
the Appellate Division seeking to vacate the affirmance of his
conviction. (Id.) Rahman contended that the assistance
provided by his appellate counsel Ryan "did not reach a level of
performance sufficient to satisfy an objective standard of
reasonableness, and there is a 'reasonable probability' that but
for counsel's deficient performance, the outcome of the appeal
would have been different." (Id.) On October 20, 2016, the
Appellate Division unanimously denied the motion. (Id.)

On November 16, 2016, Rahman applied for leave to appeal
the Appellate Division's denial of his coram nobis motion to the
Court of Appeals. (Id.) The Court denied leave. (Id.)

Rahman, pro se, filed the instant petition on July 5, 2016.
He subsequently filed an application to the Court on May 15,
2017 requesting an order staying the petition on the ground that
his coram nobis petition was pending before the New York Court
of Appeals. (Id.) That application was denied, and United
States Magistrate Judge James C. Francis IV ordered that the
present petition "is deemed amended to incorporate the
petitioner's claims of ineffective assistance of appellate
counsel as asserted in the coram nobis petition." (Id. at 9.)

4

Petitioner seeks relief from his conviction on the following grounds: (1) he was deprived of the right to conflict-free counsel and the trial court improperly denied his request for substitution of counsel (R&R at 1); (2) his guilty plea was involuntary and not knowingly made (id.); (3) his sentence of nineteen years is overly harsh and should be reduced in the interest of justice (id.); and (4) his appellate counsel was ineffective. (Id.).

On September 14, 2018 Magistrate Judge Lehrburger issued a Report and Recommendation in which he recommended that this Court deny Rahman's 28 U.S.C. § 2254 petition. The Report found that Rahman's first three claims are without merit because the state court did not unreasonably apply federal law or unreasonably determine the facts of this case. (Id. at 13.) The Report additionally found that Petitioner's last claim is procedurally barred from federal review. (Id.) Petitioner subsequently filed his objections to the Report. For the following reasons, the Report is adopted in full, and Rahman's objections are overruled.

II.  STANDARD OF REVIEW

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). When timely objections have been made to

the Report, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). To trigger the de novo review standard, objections to a report "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." Molefe v. KLM Royal Dutch Airlines, 602 F.Supp. 2d 485, 487 (S.D.N.Y. 2009).

However, when a petitioner objects by simply reiterating previous arguments or making only conclusory statements, the court should review such objections for clear error. See Genao v. United States, No. 08 Civ. 9313, 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings . . . such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servis., No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citing Camardo v. Gen Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 381-82 (W.D.N.Y. 1992)). Further, because "new claims may not be raised properly at this late juncture," such claims "presented in the form of, or along with, 'objections,' should be dismissed." Pierce v. Mance, No. 08 Civ. 4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009).

III. DISCUSSION

This court has reviewed the Report submitted by Judge Lehrburger and has considered the objections made by Petitioner. In the Report, Judge Lehrburger recommends that the Court deny the Petition. (R&R at 1.) First, Judge Lehrburger found that Rahman's request for substitution was properly denied because (1) Petitioner fails to establish that his trial counsel, Scott, had an actual conflict of interest that adversely affected his performance (id. at 17); (2) even if an actual conflict of interest had been established, there was no lapse in representation (id. at 20); and (3) Scott's representation was not ineffective under the Strickland standard because his performance was objectively reasonable. (Id. at 21.)

With respect to his argument for ineffective assistance of counsel, Rahman also argues that the trial court should have granted his request for substitution of counsel. Judge Lehrburger found that the trial court's denial of Rahman's substitution of counsel claim was not an abuse of discretion because the trial court had previously determined that Scott's performance was not ineffective. (Id. at 24.)

Second, Judge Lehrburger found that Rahman's involuntary plea claim was properly rejected by the state court because Petitioner presents no evidence of intoxication or coercion to overcome the presumed verity of his own sworn statements at his

7

plea allocution. (Id. at 30.) Further, Judge Merchan's first-hand observation of Rahman's demeanor and credibility suggests that Petitioner was fully aware of his actions. (Id. at 29.)

Third, Judge Lehrburger found that Rahman's ineffective appellate counsel claim fails the Strickland standard because appellate counsel Ryan's failure to raise issues that would likely be unsuccessful is insufficient to render her performance below the objectively reasonable standard. (Id. at 22.)

Lastly, Judge Lehrburger determined that Rahman's excessive sentence claim is procedurally barred from federal habeas review because he failed to show either cause for his default or establish a fundamental miscarriage of justice. (Id. at 39.).

In his objections, Rahman objected generally to the Report's conclusions and merely restated claims that were raised in his earlier petition, while abandoning other claims previously made. Accordingly, the Report will be reviewed for clear error. Genao, 2011 WL 924202, at *1.

1. Ineffective Assistance of Trial Counsel Claim

i. Actual Conflict of Interest

Rahman objects to the R&R on the grounds his actual conflict of interest claim did not constitute a "routine disagreement," as suggested by Judge Lehrburger, rather, he was "identifying a strategic plan or course of action to take in his defense." (Obj. at 4.) Rahman further argues that he "was

8

simply pressing upon Trial Counsel to conduct appropriate investigations which would demonstrate that he was innocent, based upon the fact that he was in a location near the scene of the crime that made it virtually, actually, and factually impossible for him to have been the shooter." (Id. at 5.) Rahman asserts that "Scott's failure to investigate potentially exculpatory evidence which could reveal Rahman's innocence and undermine pivotal testimony 'prejudice,' Rahman by causing him to plead guilty through counsel's recommendation. (Id.)

This Court agrees with Judge Lehrburger that no actual conflict existed. An actual conflict arises when "the attorney's and defendant's interest 'diverge with respect to a material factual or legal issue to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993). As discussed in the R&R, an actual conflict of interest does not arise when the defendant simply expresses dissatisfaction with his attorney's performance. States v. White, 174 F.3d 290, 296 (2d Cir. 1999).

Rahman's disagreement with his attorney's decision to not pursue the specific defense strategy suggested by Rahman does not give rise to an actual conflict of interest. (R&R at 15.)(quoting White, 174 F.3d at 296)(explaining that complaints over whether to file certain motions, to pursue certain evidentiary leads, to object to the introduction of certain

evidence at trial . . . do not give rise to a conflict of interest.")  Scott's decision to forgo Rahman's defense strategy represents a reasonable disagreement between attorney and client.  (R&R at 19.)  Petitioner's proposed defense was unsupported by evidence and may not have seemed credible in light of his signed acknowledgement that he was present.  (Id.)  (See, e.g., Colon v. Sheahan, No. 13 Civ. 6744, 2016 WL 3926443, at *5 (S.D.N.Y. July 14, 2016) (counsel's strategic decision to abandon petitioner's alibi defense was not unreasonable in light of the absence of facts supporting the alibi).

This Court also agrees with the Report that Rahman cannot establish coercion either.  Rahman confirmed under oath that he committed the underlying crimes, that no one threatened to forced him to plead guilty, and that Scott had not "said anything to [him] to have [him] plead guilty against [his] will."  (R&R at 18.)  These admissions contradict any claim of coercion.  See Reed v. Brown, No 10 Civ. 3072, 2012 WL 34092, at *6 (S.D.N.Y. Jan. 6, 2012) ("[t]he fact that [petitioner's] lawyer urged him to accept a highly favorable plea offer does not establish coercion" when he admitted to his guilt at plea hearing.)

Even if Rahman's coercion allegations were true, they do not rise to the level of actual conflict.  Scott's conclusion that the prosecution's evidence would be sufficient to convict

Rahman was reasonable assessment of the case, particularly since the prosecution had multiple eyewitnesses while Rahman had none. (R&R at 18); (See United States v. Davis, 239 F.3d 283, 287 (2d Cir. 2001)("defense counsel's perhaps honest assessment that [petitioner] would be found guilty if he went to trial, and that failing to take the plea would result in [petitioner] 'losing everything' did not create an actual conflict, although allegations that 'counsel had threatened not to investigate his case and not to file pre-trial motions if [the defendant] did not accept the plea' were sufficient.")

Here, Rahman does not specifically address why Judge Lehrburger's Report should be disregarded but merely seeks to reiterate his arguments made in his initial § 2254 petition. Accordingly, this Court finds that the Report's findings lack clear error and Rahman's Objections are denied.

ii. Actual Lapse in Representation

Rahman objects to the Report's finding of no lapse in representation by raising conclusory allegations about how his suggested defense strategy would have increased the likelihood of acquittal at trial. (Obj. at 8.) Relying on Lopez v. Scully, 58 F.3d 38, 41 (1995), Rahman refutes Judge Lehrburger's findings by claiming that he has demonstrated a "plausible alternative" defense strategy or tactic that would have allowed him to proceed to trial to prove his innocence. (Obj. at 7.)

An 'actual lapse in representation' exists when the defendant demonstrate[s] that some plausible alternative defense strategy or tactic [] might have been pursued." Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005)(quoting United States v. Feyrer, 333 F.3d 110, 116 (2d Cir. 2003)). Further, "the defendant must also show causation," such as by establishing that "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000)(emphasis in original)(quoting Winkler, 7 F.3d at 309).

This Court agrees with the Report's finding that no lapse in representation existed. Rahman contends that his "adamant request for further investigation constituted a 'plausible alternative' which would have affected Counsel's defense strategy and course of action preparing for trial." (Obj. at 7.)

However, as noted by Judge Lehrburger, Scott reasonably concluded that Rahman's alibi defense would have undermined Rahman's credibility and strengthened the prosecution's case, given the signed statement admitting to his presence at the crime scene. (R&R at 20)(Quoting Catino v. United States, No. 00 Civ. 7226, 2001 WL 536928, at *3 (S.D.N.Y. May 21, 2001)("[p]etitioner's motion fails to show a reasonable probability that the grounds for alleged inadequate representation affected the outcome of his sentencing as none of

12

the affirmative defenses raised in the petition were likely to prevail.")

Furthermore, even after Rahman openly criticized him at the pre-trial hearing, Scott continued to negotiate the terms of the plea with the prosecution and secured a favorable plea agreement that was two years shorter than the sentence originally offered by the prosecution. (R&R at 20.) As made clear by Judge Lehrburger, Scott's performance indicates that he had Rahman's best interest in mind, and no actual lapse in representation existed.

### iii. Trial Counsel's Performance

Rahman asserts in his Objection that Scott's performance fell below an objective standard of reasonableness because he failed to "make reasonable investigations or to make reasonable decision that makes particular investigations necessary". (Obj. at 11.)

As noted in the R&R, a defendant seeking to establish an ineffective assistance of counsel claim must affirmatively demonstrate that (1) the counsel's performance fell below "an objective standard of reasonableness," and (2) "the defendant suffered prejudice, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (See R&R at 14)(citing Strickland v. Washington, 466 U.S. 668, 694

(1984)).  Judge Lehrburger found that Scott's representation was not ineffective under the <u>Strickland</u> standard and that Petitioner's arguments to the contrary are not persuasive. (<u>Id.</u>)

In his objections, Rahman advises the Court to reject Scott's statements for lack of credibility.  (Obj. at 10.) Specifically, Rahman asserts that "[a]lthough Scott hired an investigator, it is difficult to conclude an investigation was conducted simply through this fact.  (<u>Id.</u>)  This Court has no reason to doubt the veracity of trial counsel Scott's statements, and his performance was objectively reasonable. Scott visited Rahman several times while he was in prison, hired an expert investigator to explore possible defenses, and ultimately secured a favorable plea agreement for Rahman.  (R&R at 21.)

The fact that Scott did not visit the scene of the crime, as indicated by Rahman in his objections, is not sufficient to render his performance below the objectively reasonable standard.  See <u>Guzman v. Sabourin</u>, 124 F. Supp. 2d 828, 834 (S.D.N.Y. Dec. 4, 2000)(petitioner could not assert ineffective assistance of counsel where his claims that his attorney was deficient for failing to visit and investigate had no evidentiary support).  Additionally, Scott's decision to not adopt Rahman's alibi defense likewise was objectively

14

reasonable. (See United States v. Romero, 91 Civ. 586, 1993 WL
485677, at *7-8 (S.D.N.Y. Nov. 22, 1993)(an attorney is under no
obligation to investigate every line of defense a defendant
suggests).

Because Petitioner has failed to meet the burden of
establishing that Scott's performance fell below the objectively
reasonable standard and has not addressed any prejudice he
suffered as a result of trial counsel's unprofessional errors,
this Court rejects Petitioner's objections and adopts the
Report's findings.

2. Substitution of Counsel Claim

Rahman claims that the district court abused its discretion
in denying Rahman's motion to substitute counsel. (Obj. at 12.)
Petitioner rejects Judge Lehrburger's finding that the motion
was "an eleventh hour request for a delay" (R&R at 24) on the
grounds that such a finding is "unsubstantiated by any logical
reasoning." (Obj. at 13.) Rahman explains that he had already
spend over a year in prison awaiting trial and that it is
unreasonable to consider his motion for substation of counsel as
a request for delay without good cause. (Id.)

"To warrant substitution of counsel where, as here, the
application is made shortly before the commencement of trial,
the defendant must show good cause." Peterson v. Bennett, No.
01 Civ. 920, 2002 WL 1582600, at *5 (E.D.N.Y. July 18, 2002)

15

(citing United States v. Schmidt, 105 F.3d 82, 89 (2d. Cir. 1997)); accord United States v. Hsu, 669 F.3d 112, 122-23 (2d Cir. 2012)(a trial court's decision not to appoint new counsel is reviewed for abuse of discretion and a reviewing court should consider "(1) whether the defendants motion for new counsel was timely; (2) whether the district court adequately inquired into the matter; (3) whether the conflict between defendant and attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication.") (R&R at 23.)

Rahman's request for substitution of counsel was properly denied. First, Petitioner made submitted the request during his pre-trial hearing, and therefore it was not timely. (Id.) As Judge Lehrburger rightfully points out, Rahman's motion was an "eleventh hour request for a delay." (Id. at 24.) The court heard testimony from Rahman, his counsel, Scott, and the prosecutor on the merits of Rahman's request, and exercised sound discretion in denying the request. (Id.)(See United States v. Simeonov, 252 F.3d 238, 242 (2d Cir. 2001)("A motion to substitute counsel is addressed to the sound discretion of the trial court.")

Rahman also failed to provide any evidence of an actual conflict of interest or a complete breakdown in communication.

16

During his pre-trial hearing, Rahman stated "I do not believe my lawyer is working in my best interest. I would like a reassignment of counsel. I don't even know what defense he is bringing up . . . everything that I've brung [sic] to his attention, to my lawyer's attention, is not being seen." (R&R at 23.) This conclusory statement failed to convince the Court that a total breakdown of communication occurred or that an adequate defense was not provided. The Judge stated on the record that he overheard Rahman and Scott's conversation immediately prior to Rahman's request for substitute counsel and that Scott was "advising [Rahman] as to the most recent plea offer" and that Rahman "did not respond in any way." (Id. at 24.)

Accordingly, the trial court's denial of Rahman's request to substitute counsel was not an abuse of discretion. See Felder v. Goord, 564 F. Supp. 2d 201, 220-21 (S.D.N.Y. 2008) (denying claim where the motion to substitute was made immediately before trial, any conflict was likely the result of petitioner's actions, and nothing in the record suggested that counsel was ineffective.) Considering Rahman's failure to object specifically to the findings proffered in the Report, his objections are denied.

3. Involuntary Plea Claim

In Rahman's § 2254 Petition, he claimed that his guilty plea was "involuntary and not knowingly made" because he was under the influence of angel dust during the plea allocution. (Petition at 1]). In the Report, Judge Lehrburger rejected this claim on the grounds that he testified on his own behalf at the plea allocution that he was pleading voluntarily, of his own free will. (R&R at 27.) Further, Judge Lehrburger noted Rahman's failure to mention the intoxication claim in his earlier motions, suggesting that the claim is an after-the-fact fiction. (Id.)

In Rahman's objections, he abandons the intoxication claim raised in his Petition and replaces it with allegations that he was mentally coerced by his trial counsel into accepting the plea. (Obj. at 15.) Rahman fails to address the Report's findings altogether but seeks rehash the issue of trial counsel's failure to consider Rahman's defense strategy. (Id.).

This Court accepts the recommendation that the plea claim be rejected. During the plea allocution, Rahman unequivocally testified that he was pleading voluntarily, of his own free will. See Reed, 2012 WL 34092, at *7 (guilty plea was voluntary where petitioner stated that he was not under influence at plea allocution and the record contains no evidence of his intoxication at that time).

18

Furthermore, Scott's decision not to use the alibi defense or adopt the evidence that Rahman suggested was not coercion. Instead, they were merely commonplace disagreements between client and attorney regarding trial strategy. See United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea"); Reed, 2012 WL 34092, at *6 ("[t]he fact that [petitioner]'s lawyer urged him to accept a highly favorable plea does not establish coercion.") Rahman's circumstances do not suggest a guilty plea that might be considered involuntary because he was coerced by threat of physical force or by "mental coercion, such as being gripped by fear of the death penalty or hope of lenience such that a defendant . . . could not rationally weigh the advantages of [pleading guilty]." Juncal, 245 F.3d at 172 (internal quotation marks omitted) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)).

Rahman did not offer any evidence of intoxication or coercion to overcome the presumed verity of his own sworn statements at his plea allocution or the trial court's factual finding to the contrary. The sentencing court had ample reason to conclude that Rahman's intoxication claim was baseless and

19

his guilty plea was valid. Accordingly, the Report is free from clear error, and Rahman's objections are denied.

4. Ineffective Assistance of Appellate Counsel Claim

In his Objections, Rahman claims that his appellate counsel was ineffective for failing to raise the issues relating to trial counsel's ineffectiveness. (Obj. at 17.) As discussed earlier, Scott was not ineffective; accordingly, Ryan cannot be ineffective for failing to argue that he was. See Larrea v. Bennett, No. 01 Civ. 5813, 2002 WL 1173564, at *18 (S.D.N.Y. May 31, 2002)(citing Aparicio v. Artuz, 268 F.3d 78, 99 n.10 (2d Cir. 2001)); see also Cumberland v. Graham, No. 08 Civ. 04389, 2014 WL 2465122, at *40 (S.D.N.Y. May 23, 2014) ("[g]iven the weakness of Petitioner's ineffective-assistance-of-trial-counsel claims, there is no basis for this Court to conclude that, had his appellate counsel raised those claims on appeal, they would have been successful.")

In any event, Ryan's failure to address Scott's allegedly inadequate investigation was not ineffective because the claims Rahman suggests would be established by that investigation were weak or conjectural. See Batista v. Boucaud, No. 09 Civ. 4800, 2010 WL 3069638, at *5 (S.D.N.Y. July 30, 2010)("it would be difficult to fault [petitioner's] appellate counsel for failing to advance a claim that, while

theoretically available, would have been futile"); <u>Black v. Herbert</u>, No. 02 Civ. 6252, 2009 WL 1097971, at *14 (S.D.N.Y. Apr. 23, 2009)("[a]s Petitioner has not demonstrated that the claims that his appellate counsel failed to raise were potentially meritorious, Petitioner has not shown that counsel performed below objectively reasonable standards by choosing not to raise those claims.")

IV. CONCLUSION

The Court has carefully reviewed the thorough and well-reasoned R&R and finds that there is no clear error of law. For the foregoing reasons, the Report and Recommendation is hereby ADOPTED in full. Rahman's habeas corpus Petition is DENIED, and his objections are OVERRULED. The Court declines to issue a Certificate of Appealability because Rahman has not made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253 (c); <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of Court is directed to terminate the motion [dkt. no. 1].


SO ORDERED.

Dated:    New York, New York
          August 1, 2019

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge